# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-202V
UNPUBLISHED

| | |
|---|---|
| MILAN HARPER,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: October 28, 2020<br><br>Special Processing Unit (SPU); Findings of Fact; Statutory Six Month Requirement; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Michael Patrick Milmoe*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for respondent.

### FINDINGS OF FACT[1]

On February 8, 2018, Milan Harper filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of her December 29, 2016 Tetanus Diphtheria acellular Pertussis ("Tdap") vaccination. Petitioner alleges a Table case for SIRVA.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner suffered the residual effects of her alleged vaccine-related injury for more than six months after vaccination, as required by Section 11(c)(1)(D)(i) of the Vaccine Act.

### I. Relevant Procedural History

On March 31, 2019, Respondent filed a Status Report indicating that he had completed review of the evidence filed in this case and wished to engage in settlement discussions. ECF No. 25. By October 8, 2019, however, the parties had determined that further settlement discussions would not be fruitful, and proposed instead that Respondent file a Rule 4 (c) Report within 60 days providing his position in this case. ECF No. 35.

On December 9, 2019, Respondent filed his Rule 4(c) Report arguing that Petitioner's case should be dismissed for failure to satisfy the "threshold severity requirement" that Petitioner suffered the residual effects of her alleged vaccine-related injury for more than six months after vaccination. ECF No. 36. On January 6, 2020, I convened a Rule 5 Status Conference at the request of the parties. ECF No. 37. During the conference, I proposed a preliminary finding that Petitioner would likely be able to establish entitlement to compensation, through satisfaction of the Table requirements for a SIRVA case. 42 C.F.R. § 100.3(c)(10) (2017). Additionally, I made a second preliminary finding that Petitioner has suffered the sequela of her injury for more than six months. *Id.*

Thereafter, Respondent indicated he no longer intended to defend this case and proposed filing an amended Rule 4(c) Report within 30 days the filing of Petitioner's outstanding medical records. ECF No. 38. However, after additional consideration, Respondent requested I issue formal findings of fact and conclusion of law regarding the severity issue, after which Respondent would file his supplemental Rule 4(c) Report. ECF No. 42. A status conference was convened on April 27, 2020. It was agreed that I would issue formal findings of fact and conclusions of law in regard to the severity requirement, and that Respondent would file his supplemental Rule 4 Report within 14 days thereafter. ECF No. 43. Subsequently, Petitioner filed a supplemental affidavit, additional documentation, and updated medical records. Exs. 17-21. On July 16, 2020, Petitioner filed a Status Report indicating that the record is complete and requesting I rule on the severity requirement issue. ECF No. 49.

## II.     Issue

Whether Petitioner suffered the residual effects of her alleged vaccine-related injury for more than six months after vaccination, as required by Section 11(c)(1)(D)(i) of the Vaccine Act.

## III.    Authority

The purpose of the Vaccine Act is to award "vaccine-injured persons quickly, easily, and with certainty and generosity." *Weddel v. Sec'y of Health & Human Servs.*, 100 F.3d 929, 932 (Fed. Cir. 1996) (quoting H.R. Rep. No. 99-908, at 3 (1986)). The Act was meant to remedy the problem that "for the relatively few who are injured by vaccines – through no fault of their own – the opportunities for redress and restitution [were] limited, time consuming, expensive, and often unanswered." *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1325 (Fed. Cir. 2011) (en banc) (quoting H.R. Rep. No. 99-908, at 6 (1986)). As a result, the program places some emphasis on speed and efficiency, especially in close cases.

The Vaccine Act requires that a Petitioner demonstrate that "residual effects or complications" of a vaccine related injury continued for more than six months. Section 11(c)(1)(D)(i). A Petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. Section 13(a)(1). In particular, a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19 (quoting *Murphy v. Sec'y of*

*Health & Human Servs.*, 23 Cl.Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.    Finding of Fact

I make the following findings after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4 report, and additional evidence filed. Specifically, I base the findings on the following evidence discussed below.

- Ms. Harper received at Tdap vaccination in her left deltoid on December 29, 2016. She was 29 weeks pregnant. Ex. 10 at 1;

- On January 8, 2017, Petitioner went to the emergency room reporting left shoulder pain "that began 10 days ago after receiving the Tdap vaccine." Ex. 2 at 68. Petitioner was found to have limited range of motion of the left upper arm and shoulder, and was admitted to the hospital. Ex. 2 at 44-45;

- Kenneth Ham, MD conducted an orthopedic evaluation on January 9, 2017 and assessed Petitioner with "reactive rotator cuff impingement, bursitis." Pet. Ex. 5 at 3-4. It was noted that Petitioner experienced "pain in the left shoulder following a pertussis vaccination to her left shoulder region. The patient noted aching pain that increased and became intense from which she had trouble lifting." Ex. 5 at 3. Petitioner was discharged on January 11, 2017. Ex. 2 at 77-78;

- Petitioner was evaluated on January 17, 2017 at her obstetrician's office for left shoulder pain. Her arm was noted to be in a sling. Petitioner reported she was advised at the hospital she had bursitis and a rotator cuff impingement due to the Tdap vaccination being administered "too high." Ex. 6 at 93. Petitioner indicated that surgery was recommended, but that she postponed shoulder surgery until after delivery of the baby. Ex. 6 at 93;

- On February 11, 2017, Petitioner delivered her baby via cesarean section. Ex. 4 at 134-135;

- On April 19, 2017, Petitioner was seen by her primary provider for a sore throat and received a strep test. Ex. 11 at 24-26. No report of shoulder pain was detailed in this record;

- On June 2, 2017, Petitioner was admitted to hospital for acute back pain and a urinary tract infection. Ex. 2 at 389. Petitioner was discharged on June 4, 2017 with diagnosis of acute back pain and urinary tract infection. *Id.* No report of shoulder pain was detailed in this record;

- On September 7, 2017, Petitioner was seen by her primary care provider for left shoulder pain "for the last 20-30 days." Ex. 3 at 3. A history was provided detailing Petitioner's receipt of a Tdap vaccine high in her shoulder when she was six months pregnant, followed by admittance to the emergency room, and recommended surgery and physical therapy after delivery. *Id.* Petitioner recounted that she had been on medication as a result of her cesarean section and that her shoulder pain had dissipated but was now continuous. *Id.* On exam, Petitioner's active range of motion was

5

- limited in her left shoulder and her strength was less than her right. Ex. 3 at 5. Petitioner was referred to an orthopedist. *Id.;*

- On October 4, 2017, Petitioner was evaluated by orthopedist, Ram Aribindi, MD "complaints of left shoulder pain since December 2016. She had noted this pain after a Tdap injection." Ex. 13 at 1. Petitioner was assessed with "left shoulder pain with limited active motion of the shoulder with tendinitis of the shoulder." *Id.* Petitioner received a steroid injection. *Id.* at 2;

- On March 13, 2018, Petitioner was seen by her primary care provider for her left shoulder pain. Her history of shoulder pain and related hospitalization when she was pregnant was provided, as well as the recommendation she undergo surgery and physical therapy post-delivery. Petitioner indicated it was not convenient to have surgery now with a one year old. Ex. 11 at 6. On exam Petitioner exhibited severely decreased passive range of motion of left shoulder. Ex. 11 at 8. An MRI and physical therapy were recommended. *Id.* at 8-9.

In this case, it is undisputed that Petitioner received a Tdap vaccination on December 29, 2016 in her left deltoid. Respondent also has not raised any dispute concerning the onset of Petitioner's left shoulder pain, and there is preponderant evidence that the onset of her pain was immediate after receipt of her Tdap vaccination. Ex. 2 at 44-45. Further, I find, based on the above medical records that Petitioner suffered the sequela of her shoulder injury for more than six months after her December 29, 2016 Tdap vaccination.

Although, Petitioner's September 7, 2017 visit to her primary care provider indicates left shoulder pain "for the last 20-30 days" the record for that visit also provides a "History of "Present Illness" that describes Petitioner's receipt of a Tdap vaccination when she was six months pregnant and emergency room visit due to her pain in her shoulder followed by a diagnosis of shoulder bursitis and discharge. Ex. 3 at 3. The record of that visit further details Petitioner's receipt of medication after her C-section and corresponding reduction in pain. *Id.*

This record is consistent with Petitioner's affidavits. Petitioner avers in her affidavits that after her C-section surgery she received pain medication, Norco, which helped her shoulder pain. Petitioner further explained that while she continued to experience pain between mid-January and September 2017, and that she wore an arm sling much of the time after her Norco was exhausted. During the summer after her baby was delivered, her mother and two friends were able to provide help with her home and her son. However, in September once she no longer had assistance and as her son began

to move about more, Petitioner sought further medical care. Exs. 7, 15, 17. Thus, although some intervening records do not record continuous, post-vaccination pain, the records do support the conclusion (bulwarked in this case by Petitioner's sworn statements) that she continued to experience pain throughout, if intermittently.

**Accordingly, I find that preponderant evidence establishes that Petitioner suffered the sequela of her alleged vaccine injury for more than six months after her December 29, 2016 Tdap vaccination.**

**Respondent shall file his Supplemental Rule 4 Report by no later than November 11, 2020.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master