**CORRECTED**

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 18-202V
UNPUBLISHED

| | |
|---|---|
| MILAN HARPER,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: October 8, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Michael Patrick Milmoe*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Colleen Clemons Hartley*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On February 8, 2018, Milan Harper filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of a Tetanus Diphtheria acellular Pertussis ("Tdap") vaccine received on December 29, 2016. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). The parties could not agree on damages, so the disputed component of pain and suffering was submitted to SPU Motions Day.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to an award of damages in the amount **$92,000.00**, **representing compensation for her actual pain and suffering.**

I. **Procedural Overview**

As noted above, the case was initiated in February 2018. Respondent filed a Rule 4(c) Report arguing that Petitioner's case should be dismissed for failure to satisfy the "threshold severity requirement" that Petitioner suffered the residual effects of her alleged vaccine-related injury for more than six months after vaccination. ECF No. 36. On October 28, 2020, I issued a Finding of Fact, however, determining that Petitioner had established severity in conformance with Section 11(c)(1)(D)(i) of the Vaccine Act. ECF No. 51. In reaction, on November 10, 2020, Respondent filed a Supplemental Rule 4(c) Report indicating that he "has elected not to defend this case" after further review of the facts, medical records, and my Finding of Fact. ECF No. 52 at 5 – 6. I therefore issued a Ruling on Entitlement on November 16, 2020, finding Petitioner entitled to compensation for her SIRVA. ECF No. 53.

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on March 17, 2021. ECF No. 63. Petitioner filed her brief on May 22, 2021, requesting that I award her $120,000.00 in compensation - representing her past/actual pain and suffering. ECF No. 66. Conversely, in a brief filed on July 16, 2021, Respondent argued that Petitioner should be awarded only $77,500.00 for past pain and suffering. ECF No. 69. Petitioner filed a Reply brief on August 2, 2021. ECF No. 70. (The parties have otherwise agreed upon an award of $4,185.03 representing Petitioner's unreimbursed expenses, so that amount is not disputed and will be awarded as well).

In August of this year, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 71. The parties agreed, and an expedited hearing took place on September 24, 2021. Minute Entry dated October 1, 2021.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

---

[3] Michael Milmoe appeared on behalf of Petitioner, and Colleen Hartley appeared on behalf of Respondent. The transcript of the September 24, 2021 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

## II.     Pain and Suffering

### A.  Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021)*.*

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### B.  Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. Harper's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on September 24, 2021. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The record establishes that Petitioner's shoulder pain was initially quite severe prompting her to go the emergency room on January 8, 2017, only ten days after her vaccination. Ex. 2 at 68. Significantly, at that time she was 31-weeks pregnant. *Id*. She reported that her shoulder pain began after receipt of her Tdap vaccine and had progressed to the point where she could not lift her upper left extremity. *Id.* She was

---

[4] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

transferred to the Labor and Delivery Department of the hospital and admitted for observation. Ex. 2 at 44, 89. The following day she received orthopedic evaluation from Kenneth Ham, MD, who assessed Petitioner with "reactive rotator cuff impingement, bursitis." Pet. Ex. 5 at 3-4. It was noted that Petitioner had experienced "pain in the left shoulder following a pertussis vaccination to her left shoulder region. The patient noted aching pain that increased and became intense from which she had trouble lifting." Ex. 5 at 3. She was discharged from the hospital after four days. Ex. 2 at 77-78. Thereafter, she underwent intermittent treatment for her shoulder injury for approximately three years.

However, the record also establishes that Ms. Harper suffered on balance a moderately severe injury. After her discharge from the hospital, Petitioner was evaluated at her obstetrician's office on January 17, 2017 for left shoulder pain. Her arm was noted to be in a sling at that time. Ex. 6 at 93. Petitioner indicated that surgery had been recommended to her, but that she postponed shoulder surgery until after delivery of the baby. Ex. 6 at 93. On February 11, 2017, Petitioner gave birth after undergoing a cesarean section. Ex. 4 at 134.

Subsequently, Petitioner had two appointments for post-partum care by her obstetrician on March 1, 2017 and April 5, 2017 (Ex. 20 at 73-76, 81-84), an examination by her primary care physician on April 19, 2017 for a sore throat (Ex. 11 at 24-26), and was seen in emergency room on June 2, 2017 for back pain and admitted to the hospital (Ex. 2 at 389). Petitioner was discharged from the hospital on June 4, 2017 with a diagnosis of acute low back pain and a urinary tract infection. *Id.* Significantly, none of these medical records documented any complaints of left shoulder pain.

Petitioner sought follow-up care for her shoulder pain with her primary care provider on September 7, 2017 – nearly eight months since she had last sought treatment, and approximately seven months after the birth of her son. Ex. 3 at 3-6. Her primary care provider detailed Petitioner's history of receipt of a Tdap vaccine high in her shoulder when she was six months pregnant, followed by admittance to the hospital two weeks later. *Id.* at 3. Petitioner indicated she was advised to undergo surgery and physical therapy after her delivery of her baby. *Id.* Petitioner reported that she had been on medication as a result of her cesarean section and that her shoulder pain had "dissipated," but that the pain was now "continuous", and she was taking ibuprofen. *Id.*

On exam, Petitioner's active range of motion was limited in her left shoulder and her strength was less than her right. Ex. 3 at 5. Petitioner was referred to an orthopedist and advised to take "Tylenol/Motrin as needed" and to "use heating pad" to treat her left shoulder pain. *Id.* Petitioner followed-up one month later with an orthopedist, Ram Aribindi, MD, on October 4, 2017. Ex. 13 at 1. Dr. Aribindi indicated Petitioner had "complaints of left shoulder pain noted since December 2016" following her Tdap

4

injection. *Id.* Petitioner was assessed with left shoulder pain and "limited active motion of the shoulder with tendinitis" and administered a steroid injection to treat her shoulder pain. *Id.* at 1-2.

Subsequently, Petitioner next sought treatment with her primary care provider five months later on March 13, 2018. Ex. 11 at 6. Petitioner's history of shoulder pain was related, as well as the recommendation she undergo surgery and physical therapy post-delivery. Petitioner indicated it was not convenient to have surgery now with a one-year-old. Ex. 11 at 6. On exam Petitioner exhibited severely decreased passive range of motion of left shoulder. Ex. 11 at 8. An MRI and physical therapy were recommended. *Id.* at 8-9. However, Petitioner did not undergo an MRI or engage in physical therapy. Ten more months passed before Ms. Harper again sought treatment for her SIRVA, this time on January 7, 2019 from Oh J. Lee, MD. She requested that Dr. Lee provide her with a referral to an orthopedic specialist for a steroid injection – Dr. Lee provided her the referral and recommended she receive physical therapy. Ex. 16 at 1-2. No records have been filed evidencing that Petitioner ever followed up with an orthopedic surgeon or received a steroid injection.

The only subsequent reference to Petitioner's shoulder pain occurs eleven months later, on December 6, 2019, when Petitioner sought a fertility referral from Dr. Lee, the notes from this visit indicate "left shoulder had a shot[5] with better [sic], and taking ibuprofen [as needed]." Ex. 16 at 3. While I do not conclude from this record that Petitioner had completely recovered from her shoulder injury at that point, I find that her SIRVA and related sequela had significantly improved. No further treatment records have been filed that would document additional treatment. [6]

Also bearing on the pain and suffering sum to be awarded are Petitioner's multiple sworn affidavits (Exs. 7, 15, 17, 23), as well as those provided by her family members (Exs. 24-26), all of which fill in the gaps between Petitioner's limited medical appointments. The affidavits detail the intense pain Petitioner felt following her vaccination (which she retrospectively rates in her May 7, 2021 affidavit as 10/10, and then 7/10 for all of 2017). *See*, e.g., Ex. 7 ¶ 3, Ex. 23 ¶ 2. Petitioners' affidavits further detail how her pain limited her ability to care for, and be active with her oldest son, born only months following her injury, as well as her second child born in 2020. *E.g.*, Ex. 23 ¶¶ 2, 5. This caused Petitioner to undergo unique suffering as she sought for many years to become a mother. *E.g.,* Ex. 23 ¶ 1.

---

[5] The records indicate Petitioner received only one steroid injection to treat her shoulder pain, notwithstanding Dr. Lee's referral on January 7, 2019 to an orthopedic surgeon for a steroid injection.

[6] Petitioner's counsel confirmed in May 2021 that Petitioner has no updated medical records outstanding. Informal Communication dated May 24, 2021.

In addition, the affidavits detail other limitations experienced by Petitioner over the course of her injury, including: difficulty sleeping, preforming household chores (such as carrying groceries, washing dishes, and doing laundry), and driving. *E.g.,* Ex. 7 ¶ 10, Ex. 23 ¶ 3. Petitioner details how she has had to rely on the use of a sling, ibuprofen, Tylenol, an adjustable bed, CBD oil, and a TENS machine to manage flare-ups of shoulder pain. *E.g.,* Ex. 23 ¶ 6. Additionally, Petitioner explains how as a result of her shoulder pain she was forced to reply upon her husband, mother, sister-in-law, for assistance with household chores and the care of her children. *E.g.,* Ex. 15 ¶ 7, Ex. 23 ¶¶ 2, 6.

Finally, the affidavits address the gaps in Ms. Harper's treatment. Petitioner explains that post-delivery of her first child she was initially able to manage her shoulder pain with the use of Norco she received after her cesarean section, and then with childcare assistance provided by her mother. *E.g.,* Ex. 15 ¶¶ 3-4. Later, she explains she did not engage in physical therapy or undergo surgery, because she was advised that at least initially these interventions would increase her pain and she indicates that could not bear further pain. *E.g.,* Ex. 17 ¶ 3. Further, Petitioner explains that she did not seek additional treatment as she was focused on the care of her family, including children with their own medical issues, and that her family was also financially constricted with poor insurance coverage. *E.g.*, Ex. 17, ¶ 3, Ex. 23 ¶4. Additionally, Petitioner's husband explains in his affidavit that Petitioner believes she can "tough everything out and would go to the doctor [at] the very last minute when the pain is unbearable" and she had "exhausted all options." Ex. 24 at ¶ 5.

Based upon all of the above, Petitioner has offered adequate record substantiation for a pain and suffering award higher than that recommended by Respondent. The affidavits in particular were helpful in illuminating the paucity of medical treatment overall. However (and informed by my experience adjudicating SIRVA claims), I also note that severe SIRVA injuries usually necessitate *ongoing* treatment and/or intrusive and time-intensive medical interventions (such as surgery, multiple steroid injections, and physical therapy). Petitioners living with such persistent pain will seek out this level of treatment despite considerations like cost or competing personal obligations – and it is reasonably inferred from treatment lapses or gaps that severity was somewhat lower. *See, e.g., Dirksen v. Sec'y of Health & Hum. Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (treatment gaps are "a relevant consideration in determining the degree of petitioner's pain and suffering"). Accordingly, in this case the gaps in treatment, and lack of medical visits and/or formal medical interventions, support an award lower than that requested by Petitioner.

Petitioner argues that her case is comparable to two other SIRVA decisions not involving surgery. *See Binette v. Sec'y of Health & Hum. Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $130,000.00 for actual pain and

6

suffering, and $1,000.00 per year for projected pain and suffering); *Cooper v. Sec'y Health & Hum. Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for actual pain and suffering). But these cases are factually distinguishable. The *Binette* petitioner underwent two rounds of physical therapy (approximately 25 sessions) to treat her injury and received five steroid injections. *Binette*, 2019 WL 1552620, at *5-6,13. Additionally, the *Binette* petitioner's injury was deemed surgically inoperable. *Id.* The *Cooper* case, like the instant matter, involved a gap in medical treatment and no MRI evidence, but the *Cooper* petitioner also underwent a significant amount of physical therapy – approximately 35 physical therapy sessions – in addition the *Cooper* petitioner sought chiropractic care, acupuncture, and massage therapy. *Cooper*, 2018 WL 6288181, at *3-8, 12-13. I thus find the awards in these cases exceed what is appropriate here.

However, I also find that Petitioner's injury was more severe than the two cases primarily cited by Respondent in support of his proposed award. *Knauss v. Sec'y Health & Hum. Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for actual pain and suffering); *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering). Rather, I find the instant case most comparable to the *Desrosiers* case – acknowledged by Respondent in a footnote within his damages brief*. Desrosiers v. Sec'y Health & Human Servs.*, No. 16-0224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for past pain and suffering). While the *Desrosiers* petitioner did undergo some physical therapy, it was not as extensive as the physical therapy undertaken by the *Cooper* or *Binette* petitioners. *Desrosiers* also involved a petitioner who was pregnant at the onset of her SIRVA – like Ms. Harper.

Ultimately, I determine that an award higher than that in *Desrosiers* is most appropriate. Ms. Harper suffered a somewhat more severe injury than that in *Desrosiers*, despite the gaps in her treatment, particularly given her four-day hospitalization following the initial onset of her shoulder pain.

## Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $96,185.03, representing $92,000.00 in compensation for her actual pain and suffering, plus $4,185.03 for Petitioner's unreimbursed expenses.** This amount represents compensation for all damages that would be available

7

under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

                                                **s/Brian H. Corcoran**
                                                Brian H. Corcoran
                                                Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

                                        **s/Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.